## MATTER OF LEE

### In Deportation Proceedings

### A-11409328

*Decided by Board June 2, and September 13, 1967*

*Decided by Attorney General May 1, 1969*

An alien who entered the United States without inspection upon a knowingly false claim of citizenship, thereby completely circumventing the immigration visa system, is ineligible for the benefits of section 241(f) of the Immigration and Nationality Act, as amended, since he was not "otherwise admissible" at time of entry.*

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

ON BEHALF OF RESPONDENT:
Robert S. Bixby, Esquire
Fallon, Hargreaves & Bixby
559 Washington Street
San Francisco, California 94111
(Brief filed)

ON BEHALF OF SERVICE:
Stephen M. Suffin
Trial Attorney
(Brief filed)

Charles Gordon
General Counsel

### BEFORE THE BOARD
(June 2, 1967)

The case comes forward on appeal by the trial attorney from a decision of the special inquiry officer entered February 16, 1967 terminating the proceedings.

The record relates to a native and citizen of China, age 30, male, whose only entry into the United States took place at Honolulu, Hawaii on February 4, 1952 when 15 years old. He was then coming to the United States to live permanently, but did not present an immigration visa. The respondent was admitted upon his false claim that he was a son of and had derived United States

---

* Reversed. See 439 F.2d 244 (C.A. 9, 1971).

citizenship from one Huey Fook. He knew that he was not in fact the son of Huey Fook and had no claim to United States citizenship.

The special inquiry officer has found that the respondent has established eligibility for suspension of deportation but has denied such relief because he is unable to find as required by section 244(a)(1) that the respondent "is deportable under any law of the United States." This finding is based upon the provisions of the waiver contained in section 241(f) of the Immigration and Nationality Act which provides: "The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

The respondent's wife is a native-born citizen of the United States and thus the respondent possesses the familial ties required by section 241(f) of the Act. The charge that the respondent is subject to deportation under the provisions of section 241(a)(2) of the Immigration and Nationality Act in that he entered the United States without inspection is predicated upon the factual allegation that when he entered the United States he falsely represented himself to be a citizen of the United States.

We have previously held that an alien who entered the United States by falsely claiming that he was a United States citizen had entered by fraud and misrepresentation but under section 241(f), since he had the required relationship, was exempt from deportation on the charge based on his fraud. *Matter of K—*, 9 I. & N. Dec. 585. The charge in the instant case that the alien entered without inspection as an alien because he entered upon his false representation that he was a United States citizen is predicated upon the same grounds.

Although the respondent in the present case is not deportable upon a stated documentary ground, the Supreme Court in the case of *Errico* v. *Immigration and Naturalization Service*, 385 U.S. 214 (December 12, 1966), noted with approval that administrative authorities have consistently held that section 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought, provided that the alien was

"otherwise admissible at time of entry." The Supreme Court noted that the intent of the Act plainly was to grant exceptions to the rigorous provisions of the 1952 Act for the purpose of keeping family units together. Congress felt that, in many circumstances, it was more important to unite families and preserve family ties than to enforce strictly the quota limitations. It is, therefore, not surprising that Congress also granted relief to aliens facing exclusion or deportation because they had gained entry through a misrepresentation. The Court held that documentary charges relating to the fraud, in the light of the humanitarian purpose of the statute in its historical background, should be waived.[1]

In the instant case, while there is nominally no documentary or quantitative charge, it is clear that the charge of entry without inspection is based upon the false and fraudulent misrepresentation that the respondent was a citizen of the United States. The fraud that is the basis of the charge is forgiven or waived by section 241(f) of the Immigration and Nationality Act. The Supreme Court in the *Errico* and *Scott* cases, 385 U.S. 214, confirmed that section 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge is brought.

The Supreme Court holding that documentary or quantitative grounds did not change the status of the respondent as a person "otherwise admissable" at time of entry who possesses the necessary familial ties, was merely an extension of the grounds presented in those cases and is not necessary to a decision in the instant case. We conclude that the respondent's deportability is waived under the provisions of section 241(f) of the Immigration and Nationality Act and that the language of the Supreme Court in the *Errico* and *Scott* cases apply even more forcefully to the instant case. We agree with the action of the special inquiry officer in terminating proceedings.

ORDER: It is ordered that the appeal of the trial attorney from the decision of the special inquiry officer terminating the proceeding be and the same is hereby dismissed.

**BEFORE THE BOARD**
(September 13, 1967)

The case comes forward on motion of the Service dated July 5, 1967 requesting the Board to reconsider its order of June 2,

---

[1] *Matter of Cordero-Santana,* 12 I. & N. Dec. 69.

1967 and urging that a sound construction of section 241(f) of the Immigration and Nationality Act would be to hold that it does not apply to an initial entrant who posed as a citizen because, not having an immigrant visa, he was not "otherwise admissable." The Service further admonishes the Board that before taking the view it has of the statute, it should await a judicial statement on this type of case; further, by construing the statute so broadly, the Board preempts the situation and blocks judicial review.

Briefly, the record relates to a native and citizen of China, 30 years old, male, who entered the United States at Honolulu, Hawaii on February 4, 1952 when 15 years old. He was then coming to the United States to live permanently, but did not present an immigration visa. The respondent was admitted upon his knowingly false claim that he was a son of and had derived United States citizenship from one Huey Fook, whereas, he knew he was not the son of Huey Fook and had no claim to United States citizenship. The special inquiry officer found the respondent eligible for suspension of deportation under section 244 of the Immigration and Nationality Act but concluded that the respondent, under the provisions of the waiver contained in section 241(f) of the Immigration and Nationality Act, was not deportable and terminated proceedings, finding that the case came within the ambit of the Supreme Court's decision in *Immigration and Naturalization Service* v. *Errico*, 385 U.S. 214 (1966). The trial attorney appealed from the decision of the special inquiry officer urging that *Errico* should be limited to the facts of that case, namely, that section 241(f) prohibits the institution of deportation proceedings only where there was fraud in connection with the procurement of an *immigrant visa*, but that it does not extend to entry under a false claim to United States citizenship.

In our decision of June 2, 1967, we carefully analyzed the holding in *Errico*. We held that the charge of "entry without inspection" was based upon the false and fraudulent misrepresentation that the respondent was a citizen of the United States which was waived by section 241(f) of the Immigration and Nationality Act on behalf of the respondent, who possessed the necessary familial tie of a citizen wife, despite the fact that nominally there was no documentary or quantitative charge in the deportation proceeding. We pointed out that the Supreme Court had noted with approval that administrative authorities have consistently held that section 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the stat-

217

ute under which the charge was brought, provided that the alien was otherwise admissable at time of entry. We concluded that the respondent's deportability was waived under the provisions of section 241(f) of the Immigration and Nationality Act and that the language of the Supreme Court applied even more forcefully to the instant case and dismissed the appeal of the trial attorney. The motion does not persuade us that our decision is wrong.[1]

In connection with the motion the appellate trial attorney has enclosed for consideration a copy of his memorandum in opposition to respondent's motion to reconsider in *Matter of Muslemi*, A-17256526. We have considered the arguments advanced in that memorandum insofar as they are applicable to the present case and we feel that there is no need to change our decision of June 2, 1967.

The instant motion criticizes the Board for extending the *Errico* holding from the narrow construction denounced by the Supreme Court to its extreme opposite, which allegedly would lead to absurd and chaotic consequences. The motion completely overlooks the fact that the Supreme Court adopted a liberal interpretation in the light of the humanitarian purpose of the statute in view of its historical background. The danger of citing hypothetical situations which would result in "painful absurdities" is illustrated by brief of counsel which likewise sets up a hypothetical situation with illogical and inequitable results by invoking the provisions of section 241(f) in the manner in which the Service seeks.

By regulations, 8 CFR 3.1(b) the Attorney General has conferred upon the Board the exercise of such discretion and authority as appropriate and necessary for such disposition of the case. We would be remiss in our duty if we did not exercise such discretion and authority. The motion will be denied.

ORDER: It is ordered that the motion be and the same is hereby denied.

### BEFORE THE ATTORNEY GENERAL
### (May 1, 1969)

The Board of Immigration Appeals, at the request of the Commissioner of Immigration and Naturalization, has referred its decision to me for review pursuant to 8 CFR 3.1(h)(1)(iii). The Board dismissed the appeal of the Immigration and Naturaliza-

---

[1] *Matter of Wong*, 11 I. & N. Dec. 712 and 12 I. & N. Dec. 8, and *Matter of Muslemi*, 12 I. & N. Dec. 249, cited by the Service, are inapposite.

tion Service from the decision of the special inquiry officer terminating the deportation proceedings instituted against respondent. The Board also denied the Service's motion for reconsideration.

Respondent is a native and citizen of China who entered the United States on February 4, 1952, when he was 15 years old. He had never applied for an immigration visa and was admitted on his knowingly false claim that he was a United States citizen. Deportation proceedings were instituted against him on a charge of entry without inspection pursuant to section 241 (a) (2) of the Immigration and Nationality Act, 8 U.S.C. 1251. A special inquiry officer ordered his deportation on the charge on February 4, 1958.

Respondent was not in fact deported, however, and he married a native-born citizen of the United States in 1965. He moved in 1967 to reopen the deportation proceedings for consideration of an application for suspension of his deportation pursuant to section 244 of the Act, 8 U.S.C. 1254, on the ground that it would result in extreme hardship to his citizen wife. The motion was granted, and a hearing was held before another special inquiry officer.

The special inquiry officer concluded that respondent was not deportable, because he satisfied the waiver provision of amended section 241 (f) of the Act, 8 U.S.C. 1251 (f), as construed by the Supreme Court in *Immigration Service* v. *Errico*, 385 U.S. 214 (1966). Accordingly, he terminated the deportation proceeding and denied the application for suspension.[1]

The decision in this case turns on the scope of amended section 241 (f), which reads as follows:

The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

Under the statute, an alien who has "procured visas or other documentation, or entry into the United States" by fraud or misrepresentation is eligible for relief from deportation if he has the necessary familial relationship and if he was "an alien otherwise

---

[1] The special inquiry officer stated that his denial was based on the ground that suspension was available only for deportable aliens. It appears, however, that if he had found respondent deportable, he would have granted the application for suspension.

admissible at the time of entry." Respondent, as the spouse of a United States citizen, clearly has the familial relationship required by the statute. The question before me is whether respondent, who has never applied for an immigration visa and who obtained entry under a false claim of citizenship, can be "an alien otherwise admissible at the time of entry."

In *Errico*, the alien obtained first preference status on the basis of a false representation that he was a skilled mechanic with specialized experience in repairing foreign automobiles. In the companion case embraced by the *Errico* decision, *Scott v. Immigration Service*, the alien fraudulently obtained nonquota status on the basis of a sham marriage with an American citizen. The Supreme Court held that they were "otherwise admissible" within the meaning of section 241 (f).

While each of those aliens misrepresented facts for the purpose of evading quota restrictions, each did submit himself to the statutory system for obtaining information from aliens who seek immigration visas, and presumably the information provided by each was found to satisfy all applicable immigration requirements other than those relating to his false status.

In order to obtain an immigrant visa pursuant to the standard requirements, applicable to all immigrants coming from abroad,[3] a visa application is filed with the American consul; a medical examination is administered to assure that the health requirements are satisfied; police certificates are obtained to show any criminal record; birth records are examined; and a valid passport is required. Furthermore, the applicant is registered and fingerprinted, and must provide satisfactory sworn responses to questions as to residence, organizational memberships, prior arrests or confinement, use of narcotics, previous deportation or immigration violations, ability to read and subversive activities.[4]

In sharp contrast to the requirements to be met prior to the issuance of an immigrant visa, a person entering the United States as a citizen need only show his citizenship. Thus, an alien who enters this country by falsely claiming that he is a United States citizen manages to avoid furnishing the information that is required of an alien and that serves as the basis for determining whether he is admissible as an immigrant.

---

[2] Under the procedure provided by section 245 of the Act, 8 U.S.C. 1255, certain aliens in the United States may have their status adjusted to that of an alien admitted for permanent residence. But they must be eligible for immigration visas.

[3] For additional conditions precedent to approval of an immigrant visa, see Gordon and Rosenfield, *Immigration Law and Procedure* §§ 3.3-8.

220

Despite this critical difference between entering the United States under a fraudulently obtained immigrant visa and entering pursuant to a false claim of citizenship, in the present case the Board interpreted *Errico* as authorizing relief from deportation for an alien who had satisfied none of the immigration requirements at the time of his entry. I find nothing in the language of section 241(f), its legislative history or the *Errico* opinion to support the view that Congress intended to permit the complete circumvention of the immigration visa system established by the Act. Such a circumvention would result from a holding that section 241(f) applies to an alien who neither was granted nor applied for an immigrant visa, but obtained his initial entry by posing as a citizen.

Section 241(f) must be interpreted in light of the process established by the Immigration and Nationality Act for obtaining information from aliens who seek to qualify for entry into the United States. In granting relief to certain aliens who have "procured visas or other documentation, or entry into the United States by fraud or misrepresentation," section 241(f) only encompasses fraud or misrepresentation committed by an alien in the course of furnishing information or otherwise being processed as required by our immigration laws. An evaluation of information furnished by an alien is necessary for the immigration authorities to determine whether he is admissible as an immigrant. The "otherwise admissible" requirement of section 241(f) would be meaningless if it were not interpreted to mean that the alien at the time of entry must have satisfied all of the other requirements necessary to entry as an immigrant, apart from his admissibility derived from the particular facts or status as to which he made his misrepresentation. An alien such as the pres-

---

[4] Most of the immigration requirements are waived for aliens who come here as nonimmigrant visitors. See, *e.g.*, 8 U.S.C. 1202 (c), 22 CFR 41.5–7, 41.114 and 41.116. Consequently, an alien who has evaded most of the immigration requirements by fraudulently entering as a nonimmigrant visitor who also does not appear to be an "otherwise admissible" immigrant. The Board held in *Matter of Cadiz*, 12 I. & N. Dec. 560 (January 9, 1968), that nonimmigrant visitors are not entitled to relief under 241(f). The courts have not ruled on the issue as a general proposition. Several courts have held that under certain circumstances 241(f) did not grant relief to nonimmigrant visitors. *Ferrante* v. *Immigration and Naturalization Service*, 399 F.2d 98 (6th Cir. 1968); *Tsaconas* v. *Immigration and Naturalization Service*, 397 F.2d 946 (7th Cir. 1968). On the other hand, the Ninth Circuit recently remanded a case involving a nonimmigrant visitor for an administrative determination of whether the alien was "otherwise admissible" at the time of entry. *Muslemi* v. *Immigration and Naturalization Service*, No. 22, 419 (9th Cir. March 17, 1969).

ent respondent, who never applied for and obtained an immigrant visa, cannot meet that test.[4]

Respondent attempts to broaden the *Errico* decision by relying on several pre-*Errico* opinions of the Board which deal with aliens lawfully admitted for permanent residence who are returning to the United States after a temporary trip abroad. Such reliance is misplaced, since returning resident aliens are eligible for certain discretionary relief which is not available to an alien seeking to enter this country for the first time. Under section 211(b) of the Act, 8 U.S.C. 1181(b), a returning resident alien who is otherwise admissible may be readmitted in the discretion of the Attorney General without the required documentation. Similarly, section 212(c), 8 U.S.C. 1182(c), provides that a returning resident alien may be readmitted in the discretion of the Attorney General without regard to most of the grounds of exclusion specified by the Immigration and Nationality Act.

In *Matter of K—*, 9 I. & N. Dec. 585 (1962), the Board considered the matter of a resident alien who took a two-hour trip to Canada and then reentered the United States by misrepresenting himself as a United States citizen. While the Board found that the alien was inadmissible on two separate grounds in addition to his fraud, it also found that he qualified for discretionary waivers of both of those grounds. Therefore, the Board regarded the alien as if he were applying for admission *nunc pro tunc* as of the time of reentry, and granted him the appropriate waivers. As a result, the Board viewed the alien as one who, apart from the inadmissibility derived from his misrepresentation as to citizenship, satisfied at the time of reentry all of our other immigration requirements for returning resident aliens. Since he was thus an "otherwise admissible" alien in the Board's view, it proceeded to invoke section 241(f) to remove the effect of his fraud and allow his reentry.[5]

Such a rationale cannot be extended to cases like the instant one. An alien who has not even applied for an immigrant visa, much less been examined and granted such a visa, has satisfied none of our immigration requirements and cannot properly be treated as an "otherwise admissible" alien.

Accordingly, the order of the Board dismissing the appeal of the Immigration and Naturalization Service is reversed. The case is remanded to the Board for disposition of respondent's application for suspension of deportation.

---

[5] The Board reached a like result in *Matter of Y—*, 8 I. & N. Dec. 143 (1959).

222